IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:02-540-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CARL ERIC HOPKINS | ) | |
| _____ | ) | |

This matter is before the court upon the defendant's sealed *pro se* motion for compassionate release (ECF No. 174) pursuant to the First Step Act[1] and 18 U.S.C. § 3582(c)(1)(A). The defendant contends that his current medical conditions place him at a higher risk of becoming seriously ill from the COVID-19 virus.

The government has responded and the defendant has replied thereto. The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

## I. STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin,* 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is

---

[1] Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), provides:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

2

> (i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

Before the passage of the First Step Act, the United States Sentencing Commission permitted a sentence to be modified due to the defendant's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. *See* U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reasons" other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. at n. 1 (D).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is as of now no "applicable policy statement governing compassionate release

3

motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also*, *Kibble*, 992 F.3d at 331.

Nevertheless, § 1B1.13 provides a framework when evaluating a defendant's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A).

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).[2]

---

[2] The defendant must exhaust his administrative remedies as defined in § 3582(c)(1)(A) before filing a motion for compassionate release in this court. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (finding that "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion"); *United States v. Williams*, No. CR JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020) (denying motion for reduction of sentence because defendant failed to exhaust his administrative remedies, but declining to decide whether exhaustion requirement is jurisdictional).

In his motion before this court, the defendant attests that he requested compassionate release for his medical issues pursuant to § 3582(c)(1)(A) to the Warden on June 10, 2020, and such request was denied on June 26, 2020. The government concedes that the defendant has satisfied the procedural requirements of § 3582(c)(1)(A). As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits. Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. Under these circumstances, a chronic condition for which the defendant is not expected to recover reasonably may be found to be serious and substantially diminish the ability of the defendant to provide self-care within the correctional institution, even if that condition would not have constituted an extraordinary and compelling reason absent the risk of COVID-19.

5

As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

*Extraordinary and Compelling Reasons*

The defendant is now 49 years old and is serving a life sentence with the Federal BOP. Although the records submitted by the defendant in support of his motion were all dated some ten years ago, the government has responded and submitted to the court more current medical records. These sealed records reveal that the defendant suffers from Type 2 diabetes and high blood pressure or hypertension. The defendant also suggests that his medical conditions could be exacerbated during his incarceration due to COVID-19.

The government concedes that the defendant's Type 2 diabetes appears to fall within the list of conditions which increase one's risk for severe illness from COVID-19. With regard to the defendant's high blood pressure, this condition *might* be create an increased risk for someone with COVID-19.

The government suggests, and the medical records reveal, that the defendant's medical conditions are well controlled at the BOP facility and do not present any impediment to his ability to provide self-care in the institution. The defendant's diabetes and high blood pressure are being treated with medication and his medical condition is appropriately managed at the facility. Thus, the government argues that the defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under

§ 3582(c)(1)(A).

The government also sets forth a comprehensive discussion of the strenuous measures the BOP is taking to protect the health of the inmates in its charge and to mitigate the risks of COVID-19.  In late December 2020, BOP facilities began receiving initial allotments of COVID-19 vaccines.   According to the BOP, as of August 3, 2021, it has distributed more than 194,000 vaccines and administered more than 205,728 of them.  The defendant has not advised the court whether or not he has ever tested positive for COVID-19 or if he has received a vaccination.

For the above reasons, the court determines that the defendant has failed to show that his diabetes or high blood pressure substantially diminish his ability to provide self care against serious injury or death as a result of COVID-19.  As a result, the court finds that the defendant has not provided an extraordinary and compelling reason for compassionate release on this basis.

### *Procedural History and Factors Under 18 U.S.C. § 3553(a)*

Even if the defendant did make a showing of an extraordinary and compelling reason, this court would still exercise its discretion not to reduce the sentence because the totality of the record in this case clearly demonstrates that the defendant would present a danger to the community if released.  Indeed, this case represents one of the most egregious criminal cases this court has faced in its 35 years on the federal bench. The government strenuously opposes compassionate release based upon the § 3553(a) factors which it contends weigh heavily

against his release.

In deciding this matter, the court will consider the factors set forth in 18 U.S.C. § 3553(a), to the extent applicable: the nature and circumstances of the offense; history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant; and the need to avoid unwarranted sentencing disparities. Overall, the sentence must be sufficient, but not greater than necessary, to achieve these purposes.

As the government points out in its opposition memorandum, the defendant is an extremely violent and dangerous individual who initially pleaded guilty to federal drug charges and was sentenced to five years incarceration in 1995. Upon his release from federal prison (even while he was residing at a federal halfway house facility), he immediately reentered the drug business and was ultimately charged with the murder of a fellow drug dealer in Columbia, South Carolina.

In September 2003, the defendant pleaded guilty to six counts of a superseding indictment to the following charges:

Count 1:    Conspiracy to possess with intent to distribute and distribution of quantities of heroin and marijuana, in violation of 21 U.S.C. § 846;

Count 3:    Conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846;

Count 5:     Money laundering, in violation of 18 U.S.C. §§ 1956 and 2;

Count 6:     Murder in furtherance of a serious drug trafficking crime, in violation of 21 U.S.C. § 848(e);

Count 7:     Use of a firearm to commit murder in connection with a drug trafficking and violent crime, in violation of 18 U.S.C. §§ 924(j)(1) and 2; and

Count 15:    Providing contraband in a federal prison, in violation of 18 U.S.C. §§ 179(a)(1), 179(b)(1), 179(d)(1)(C), and 2.

Although this case was death penalty eligible, the government agreed in the plea agreement not to seek the death penalty, along with other recommendations, in exchange for the defendant's agreement to plead guilty and cooperate. The defendant, in his plea agreement, agreed that a life sentence was appropriate in his case, pursuant to Fed. R. Crim. P. Rule 11 (c)(1)(C). In particular, the defendant agreed to a stipulated sentence of life on Counts 6 and 7 in exchange for the government's agreement not to seek the death penalty on these two counts (ECF No. 45, PSR at ¶ 13).

The U.S. Probation Office prepared a Presentence Report (PSR) which determined the defendant's offense level at 43[3] and his criminal history category at IV. This yielded a Guideline range of life.

On January 20, 2004, the court held a sentencing hearing, with no objections from the defendant, and sentenced the defendant to a term of incarceration of life. The defendant has

---

[3] The offense level would have been a level 48, however, pursuant to U.S.S.G. App. Note 2 of Chapter 5, the maximum total offense level was 43.

received credit for time served since August 1, 2002.

Thereafter, the defendant has filed a number of motions and appeals with this court and with the Fourth Circuit, all of which have been unsuccessful.

Addressing the § 3553(a) factors, as applicable, this court determines that:

1.  *Nature and Circumstance of the Offense*.  The defendant is currently incarcerated for possessing with intent to distribute heroin and marijuana, cocaine base, and cocaine.  He was also charged with money laundering and use of a firearm to commit murder in connection with a drug trafficking and violent crime.  Finally, and most importantly, the defendant was charged with murder in furtherance of a serious drug trafficking crime.  It is therefore easy for this court to conclude that the defendant's crimes were serious to begin with.  Furthermore, the court cannot ignore the fact that the victim of the murder was dismembered and burned, buried on one occasion, and then dug up and reburied in a second location.

The evidence produced by the government in this case clearly revealed that the defendant was the moving force behind the murder, as he directed certain of his associates in conducting the murder and desecrating the body following the murder.  Specifically, after the victim was struck with weapons fire several times from the weapons possessed by the defendant, the defendant directed that the two Coleman brothers dismember and burn the body of Thomas Summers.

2. *History and Characteristics of the Defendant.* As noted previously, the defendant had a criminal history category of IV near the top of the scale for criminal offenses. He had been given a federal sentence of 5 years in 1995, and upon his release, immediately rejoined the drug distribution business. In fact, he involved himself in drug distribution while still in the federal halfway house for the 1995 sentence. He organized and participated in the murder of a fellow drug dealer, and then suggested to his associates that they murder other individuals that might be witnesses against him. On this record, the court has little hesitation in holding that the defendant is a most violent individual.

Prior to the instant federal conviction, the defendant had been convicted in both federal and state court. He has the following prior state convictions: disorderly conduct/simple assault/trespassing (1992); driving under suspension (1994); possession of marijuana (1995).

The defendant was approximately 30 years old when the instant offenses took place.

Although the defendant's disciplinary infractions while incarcerated at the BOP are quite old—some dating back to early 2000s—he was sanctioned on two occasions for threatening bodily harm, refusing to obey an order, introduction of drugs/alcohol, and exchanging money for contraband. According to the most recent Sentry Report provided by the government, it does not appear that the defendant has had any disciplinary violations within the past 10 years.

*Post-Sentencing Conduct*

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of his or her 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011). On a motion to reduce sentence under the First Step Act, a district court must consider the defendant's post-sentencing conduct. *See United States v. McDonald*, 986 F.3d 402 (4th Cir. Jan. 22, 2021).

In his sealed reply, the defendant attaches a copy of his BOP summary reentry plan and progress report. He currently works as an orderly since June 2020 and has received good work evaluations. He has no noted mental health abnormalities which would preclude him from employment at this time. He has no medical restrictions for regular duty, is cleared for food service, and is required to be in a lower bunk. His Unit Team recommends that he enroll in adult continuing education and a daily exercise program. He completed his GED in 1996. His has 19 education courses listed from 2005 to present. These include advanced cinema, various history and war courses, film appreciation, and real estate/mortgage.

3. *Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Adequately deter the Defendant and Others*

Were the court to release the defendant at this time, his sentence would not meet the goals of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and adequate deterrence.

12

## IV.  CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(1)(A).

Moreover, even if the defendant could demonstrate an extraordinary and compelling reason, this court's analysis and balancing of the § 3553(a) factors, taken collectively, clearly weigh against release of the defendant.

Accordingly, the defendant's motion (ECF No. 174) is denied.

IT IS SO ORDERED.

August 20, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge