IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:02-540-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| CARL ERIC HOPKINS | ) | AND ORDER |
| _____ | ) | |

This matter is before the court on defendant's *pro se* motion for a reduction of his sentence in light of § 404(b) of the First Step Act of 2018[1] as it relates to crack cocaine offenses and retroactive application of the Fair Sentencing Act of 2010.[2]

The First Step Act of 2018 was signed into law on December 21, 2018. One of the changes in the Act relates to the Fair Sentencing Act of 2010 which, among other things, reduced statutory penalties for cocaine base ("crack") offenses.[3] Specifically, § 404 of the First Step Act retroactively applies the reduced penalties under the Fair Sentencing Act to covered offenses committed *before* August 3, 2010.

A defendant is eligible to move for relief under the First Step Act if he committed a covered offense. *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020). The First Step Act defines a "covered offense" as a violation of a Federal criminal statute, the statutory

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (enacted Dec. 21, 2018).

[2] Pub. L. 111-220; 124 Stat. 2372 (2010).

[3] Effective August 3, 2010, the Fair Sentencing Act reduced the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (raising from 50 to 280 grams the amount of cocaine base needed to trigger statutory range of 10 years to life in prison); 21 U.S.C. § 841(b)(1)(B)(iii) (raising from 5 to 28 grams the amount of cocaine base needed to trigger statutory range of 5 to 40 years in prison).

1

penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010. A court may not entertain a motion to reduce a sentence if the sentence was previously imposed or reduced in accordance with the amendments made by the Fair Sentencing Act of 2010 or if a previous motion to reduce the sentence was denied after a complete review of the motion on the merits.

The mechanism for bringing a First Step Act motion is found at 18 U.S.C. § 3582(c)(1)(B), which states that a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019). This court's authority for granting an FSA motion is broad. Under this provision, "there is no limiting language to preclude the court from applying intervening case law" when evaluating an FSA motion. *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020). Furthermore, 18 U.S.C. § 3553(a) "sentencing factors apply in the § 404(b) resentencing context." *Id*. at 674. Finally, "the resentencing court has discretion within the § 404(b) framework to vary from the Guidelines and, in doing so, to consider movants' post-sentencing conduct." *Id*.

It does not automatically follow, however, that the sentence must be reduced. Indeed, the First Step Act indicates, in two different sections, that any relief awarded is discretionary with the sentencing court. Under § 404(b) of the First Step Act, the court "may," but is not required to, grant statutory relief. The discretionary nature of the relief is further emphasized in § 404(c) of the First Step Act. Building on the "may" language in § 404(b), this section

provides that "nothing in the section is to be construed to require a court to reduce any sentence" under the Act. A district court's decision whether to afford relief to an eligible defendant under the First Step Act is discretionary. *Gravatt*, 953 F.3d at 261, 264; *Wirsing*, 943 F.3d at 186.

The resentencing court has discretion within the § 404(b) framework to vary from the Guidelines and, in doing so, to consider the defendant's post-sentencing conduct. *United States v. McDonald*, 986 F.3d 402 (4th Cir. 2020).

To determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in an analysis that involves (1) the recalculation of the guidelines range "in light of 'intervening case law,' " and (2) a reconsideration of the 18 U.S.C. § 3553(a) factors, taking into account a defendant's post-sentencing conduct. *United States v. Lancaster*, 997 F.3d 171, 175, 177 (4th Cir. 2021) (quoting *United States v. Chambers*, 956 F.3d 667, 672 (4th Cir. 2020)); see also *United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021) ("[D]istrict courts must correct original Guidelines errors and apply intervening case law made retroactive to the original sentence.") (emphasis in original); *Chambers*, 956 F.3d at 674. However, "the analysis is not intended to constitute a plenary resentencing." *Lancaster*, 997 F.3d at 175.

Section 2 of the Fair Sentencing Act altered the quantity threshold for the mandatory minimums in 21 U.S.C. § 841, and Section 3 eliminated the mandatory minimum for simple possession. In *United States v. Wirsing*, 943 F.3d 175, 185-86 (4th Cir. 2019), the United

States Court of Appeals for the Fourth Circuit concluded that a person is eligible if he was sentenced under 21 U.S.C. § 841(a) and (b)(1)(A)(iii) or (B)(iii). In *Gravatt*, the Fourth Circuit held that a defendant remains eligible under the Act even if the conspiracy for which he was convicted encompassed distribution of both cocaine powder and crack cocaine. In *Terry v. United States*, 141 S.Ct. 1858, 1862-63 (2021), confirmed that those convicted of offenses that do not trigger any mandatory minimum are ineligible for consideration.

In his § 404(b) motion, the defendant contends that because his co-conspirators, Martez Coleman and Rodney Coleman,[4] were granted sentence reductions, he should be granted a reduction as well. In that case, as well as here, the government strenuously opposes a reduction because the defendant's ultimate guidelines range was based upon a murder cross-reference and a number of role and obstruction enhancements.

*Recalculation of the Guideline Ranges*

The United States Probation Office prepared a Sentence Reduction Report (SRR) (ECR No. 192) and concludes that the defendant was convicted for a covered offense and that he is eligible for consideration of a reduced sentence and term of supervised release. The government concedes that the defendant is eligible for relief under the First Step Act, but requests that the court exercise its discretion and decline to reduce the defendant's sentence.

---

[4] See *United States v. Ronald Payne*, et al., CR No. 3:01-506-JFA (D.S.C.).

4

As set forth in his original Presentence Report (PSR) (ECF No. 192-1), the defendant's drug Guideline (Counts 1 and 3) consisted of a base offense level 43 due to the application of the cross-reference to murder under United States Sentencing Guideline (U.S.S.G.) § 2A1.1(a). The defendant received a 4-level enhancement for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive and received a 2-level enhancement for obstruction, which resulted in an adjusted offense level 49.

On the money laundering conviction (Count 5), the defendant had a base offense level 23, received a 3-level enhancement since the funds were the proceeds of drug distribution, and received 4-level enhancement for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive, which resulted in an adjusted base offense level 30.

For the murder while engaged in a drug trafficking offense (Count 6), the defendant had a base offense level 43 and received a 4-level enhancement for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive, which resulted in an adjusted offense level 47.

With regard to the §924(c) charge (Count 7), the defendant had a base offense level 43 and received a 4-level enhancement for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive, which resulted in an adjusted offense level 47.

Finally, with regard to the contraband conviction (Count 15), the defendant had a base offense level 26, received a 4-level enhancement for being an organizer/leader of a criminal activity that involved five or more participants or was otherwise extensive and 2-level enhancement for obstruction of justice, which resulted in an adjusted offense level 32.

After grouping the Counts, the highest Guideline applied, which was level 49, taken from Counts 1 and 3. After a multiple count adjustment under U.S.S.G. § 3D1.4, the defendant's combined adjusted offense was a level 51. After a 3-level reduction for acceptance of responsibility, the defendant had an adjusted offense level of 48. However, since the highest offense level in the Guidelines is a level 43, the defendant's total offense level became 43 pursuant to U.S.S.G. § 5A. With a criminal history category of IV, the defendant's Guideline range was life.

*Consideration of Factors under 18 U.S.C. § 3553(a)*

As detailed below, this court has determined that although the defendant is eligible for consideration, relief is not appropriate in this case. While the defendant is eligible for consideration because he was convicted in part, under a "covered offense" the defendant's Guideline range in this case was based upon a murder cross reference and a number of role and obstruction enhancements. Additionally, the FSA had no impact on the statutory provisions or the applicable Guideline range.

So although the defendant's Guidelines have not changed under the First Step Act, the court must consider the statutory factors under 18 U.S.C. § 3553(a) and any post-

6

sentencing conduct to impose a sentence which is sufficient, but not greater than necessary by considering, in part:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; . . . the kinds of sentences available . . . and the sentencing range establish[ed] for the . . . offense committed . . . as set forth in the [G]uidelines[.]

18 U.S.C. § 3553(a).

1.   *Nature and Circumstances of the Offense.*  By way of background, and as the government points out in its opposition memorandum, the defendant is an extremely violent and dangerous individual who initially pleaded guilty to federal drug charges and was sentenced to five years incarceration in 1995.  Upon his release from federal prison (even while he was residing at a federal halfway house facility), he immediately reentered the drug business and was ultimately charged with the murder of a fellow drug dealer in Columbia, South Carolina.

In September 2003, the defendant pleaded guilty to six counts of a superseding indictment to the following charges:

> Count 1:   Conspiracy to possess with intent to distribute and distribution of quantities of heroin and marijuana, in violation of 21 U.S.C. § 846;
>
> Count 3:   Conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846;

7

  Count 5:  Money laundering, in violation of 18 U.S.C. §§ 1956 and 2;

  Count 6:  Murder in furtherance of a serious drug trafficking crime, in violation of 21 U.S.C. § 848(e);

  Count 7:  Use of a firearm to commit murder in connection with a drug trafficking and violent crime, in violation of 18 U.S.C. §§ 924(j)(1) and 2; and

  Count 15:  Providing contraband in a federal prison, in violation of 18 U.S.C. §§ 179(a)(1), 179(b)(1), 179(d)(1)(C), and 2.

Although this case was death penalty eligible, the government agreed in the plea agreement not to seek the death penalty, along with other recommendations, in exchange for the defendant's agreement to plead guilty and cooperate. The defendant, in his plea agreement, agreed that a life sentence was appropriate in his case, pursuant to Fed. R. Crim. P. Rule 11 (c)(1)(C). In particular, the defendant agreed to a stipulated sentence of life on Counts 6 and 7 in exchange for the government's agreement not to seek the death penalty on these two counts (ECF No. 45, PSR at ¶ 13).

On January 20, 2004, the court held a sentencing hearing, with no objections from the defendant, and sentenced the defendant to a term of incarceration of life. The defendant has received credit for time served since August 1, 2002.

Thereafter, the defendant has filed a number of motions and appeals with this court and with the Fourth Circuit, all of which have been unsuccessful.

In summary fashion, this court can easily conclude that the defendant is a violent individual who committed a particularly heinous crime within a matter of months from his

release on an earlier federal conviction, whose ultimate sentence in this case was not based upon any controlled substance weights or sentencing factors, but was instead based on a murder cross reference under the Guidelines. Moreover, the evidence showed that the defendant was the ringleader of the drug conspiracy in the murder.

    2. *History and Characteristics of the Defendant*. As noted previously, the defendant had a criminal history category of IV near the top of the scale for criminal offenses. He had been given a federal sentence of 5 years in 1995, and upon his release, immediately rejoined the drug distribution business. In fact, he involved himself in drug distribution while still in the federal halfway house for the 1995 sentence. He organized and participated in the murder of a fellow drug dealer, and then suggested to his associates that they murder other individuals that might be witnesses against him. On this record, the court has little hesitation in holding that the defendant is a most violent individual.

    Prior to the instant federal conviction, the defendant had been convicted in both federal and state court. He has the following prior state convictions: disorderly conduct/simple assault/trespassing (1992); driving under suspension (1994); possession of marijuana (1995).

    The defendant was approximately 30 years old when the instant offenses took place.

    Although the defendant's disciplinary infractions while incarcerated at the BOP are quite old—some dating back to early 2000s—he was sanctioned on two occasions for threatening bodily harm, refusing to obey an order, introduction of drugs/alcohol, and

exchanging money for contraband. According to the most recent Sentry Report provided by the government, it does not appear that the defendant has had any disciplinary violations within the past 10 years.

*Post-Sentencing Conduct*

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of his or her 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011). On a motion to reduce sentence under the First Step Act, a district court must consider the defendant's post-sentencing conduct. *See United States v. McDonald*, 986 F.3d 402 (4th Cir. Jan. 22, 2021).

In his sealed reply, the defendant attaches a copy of his BOP summary reentry plan and progress report. He currently works as an orderly since June 2020 and has received good work evaluations. He has no noted mental health abnormalities which would preclude him from employment at this time. He has no medical restrictions for regular duty, is cleared for food service, and is required to be in a lower bunk. His Unit Team recommends that he enroll in adult continuing education and a daily exercise program. He completed his GED in 1996. His has 19 education courses listed from 2005 to present. These include advanced cinema, various history and war courses, film appreciation, and real estate/mortgage.

3.  *Seriousness of the Crimes*. This court regards the defendant's crimes as very serious, fully supportive of a significant sentence. The defendant is currently incarcerated for possessing with intent to distribute heroin and marijuana, cocaine base, and cocaine. He

was also charged with money laundering and use of a firearm to commit murder in connection with a drug trafficking and violent crime. Finally, and most importantly, the defendant was charged with murder in furtherance of a serious drug trafficking crime. It is therefore easy for this court to conclude that the defendant's crimes were serious to begin with. Furthermore, the court cannot ignore the fact that the victim of the murder was dismembered and burned, buried on one occasion, and then dug up and reburied in a second location.

4. *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

7. *Need to Avoid Unwarranted Sentencing Disparities*. The defendant's current sentence is not disproportionate to those similarly situated defendants in this case. The court has previously reduced the life sentences imposed on two of the defendant's co-conspirators—brothers Rodney Coleman and Martez Coleman—for reasons stated in the

orders entered in those cases. Among those reasons was the relative youth (ages 20 and 23) when they committed the crimes and the fact that they were acting on directions of the defendant in this case. Unlike the defendant, neither of the Coleman brothers had a criminal record of any kind. They did not fire the fatal gunshots, but rather participated in desecrating and burying the body. While still holding the murder weapon in his hand, the defendant told the Colemans to dig the grave or "[they] would be next." Thus, the Coleman brothers cannot be considered comparable actors for purposes of comparative sentencing.

It would be a perverse distortion of the sentencing disparity doctrine to grant the Coleman brothers' motions for a reduction based in large part on the fact that they were dominated by an older, experienced criminal, and then turn around and reduce the sentence of the experienced criminal based on the reductions give to the Coleman brothers.

## CONCLUSION

Having recalculated and considered the advisory sentencing Guidelines, the relevant statutory sentencing factors under 18 U.S.C. § 3553(a), the recently adopted provisions of the First Step Act, and the full record in this matter, the defendant's motion (ECF No. 189) is denied for the reasons stated herein.

The defendant's motion for appointment of counsel is denied as well (ECF No. 196).

IT IS SO ORDERED.

August 20, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge