IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:02-540-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| CARL ERIC HOPKINS ) | |
| _____ ) | |

This matter is before the court on the defendant's second *pro se* motion[1] for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 207). The defendant claims that his life sentence should be reduced to 360 months due to his medical conditions, his rehabilitation, and a disparity in his sentence. He also claims he is entitled to relief under § 404(b) of the First Step Act.

The government opposes the defendant's motion, arguing that the defendant fails to present extraordinary and compelling circumstances to warrant his release and that the § 3553(a) factors weigh heavily against his release. The defendant replied thereto.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] In an order filed in December 2023, this court directed the defendant to file an amended motion for compassionate release in light of the recent changes to the U.S. Sentencing Guideline policy guidelines. The defendant filed an amended motion (ECF No. 229).

1

PROCEDURAL HISTORY

In September 2003, the defendant pleaded guilty to six counts of a superseding indictment to the following charges:

Count 1: Conspiracy to possess with intent to distribute and distribution of quantities of heroin and marijuana, in violation of 21 U.S.C. § 846;

Count 3: Conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846;

Count 5: Money laundering, in violation of 18 U.S.C. §§ 1956 and 2;

Count 6: Murder in furtherance of a serious drug trafficking crime, in violation of 21 U.S.C. § 848(e);

Count 7: Use of a firearm to commit murder in connection with a drug trafficking and violent crime, in violation of 18 U.S.C. §§ 924(j)(1) and 2; and

Count 15: Providing contraband in a federal prison, in violation of 18 U.S.C. §§ 179(a)(1), 179(b)(1), 179(d)(1)(C), and 2.

Although this case was death penalty eligible, the government agreed in the Plea Agreement (ECF No. 45) not to seek the death penalty, along with other recommendations, in exchange for the defendant's agreement to plead guilty and cooperate on all the above counts. In his written Plea Agreement, the defendant agreed under Fed. R. Crim. P. Rule 11 (c)(1)(C) that a life sentence was appropriate in his case. In particular, the defendant agreed to a stipulated sentence of life on Counts 6 and 7 in exchange for the government's agreement not to seek the death penalty on these two counts (ECF No. 45, PSR at ¶ 13).

The U.S. Probation Office prepared a Presentence Report (PSR) which determined the defendant's offense level to be 43[2] and his criminal history category was IV. This yielded a Guideline range of life.

On January 20, 2004, the court held a sentencing hearing, with no objections from the defendant, and sentenced the defendant to a term of incarceration of life. The defendant has received credit for time served since August 1, 2002.

Thereafter, the defendant has filed a number of motions and appeals with this court and with the Fourth Circuit, all of which have been unsuccessful.

## STANDARD OF REVIEW

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195. The defendant bears the burden to establish that he or she is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

---

[2] The offense level would have been a level 48, however, pursuant to U.S.S.G. App. Note 2 of Chapter 5, the maximum total offense level was 43.

3

The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024). Relevant here, an amended Sentencing Guidelines policy statement went into effect in November 2023 and provides criteria for determining the existence of extraordinary and compelling reasons for release. Generally, the list of circumstances qualifying as extraordinary and compelling falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions. U.S.S.G. § 1B1.13(b).

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the Bureau of Prisons (BOP) bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matters on the merits. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).

4

DISCUSSION

The Sentencing Commission issued a policy statement, amended in November 2023, that governs reduction of sentences under § 3582(c)(1)(A). The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(A). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(B). Third, extraordinary and compelling reasons exist when the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in heath or death." U.S.S.G. § 1B1.13, cmt. n.1(b)(1)(C).

The government suggests that the defendant does not claim that he is entitled to relief under any specific policy statement provision and the government does not find any of the other policy statements applicable under the circumstances.

I. *Medical Conditions*

On his form motion for compassionate release (ECF No. 207), the defendant marked the box claiming that he has been diagnosed with a terminal illness and that he has a serious physical or medical condition that substantially diminishes his ability to provide self-care at the Bureau of Prisons (BOP). The defendant also contends that he is at a heightened risk of developing severe complications if he contracts COVID-19.

The defendant states that he is now 50 years of age and before his incarceration he was without any medical problems. He complains that due to poor living conditions and inadequate nutrition at the BOP, he now suffers from diabetes, obesity, hypertension, asthma, blood clots, and has had back and shoulder surgery. He uses a CPAP machine and special medical bedding for sleep.

The government argues that the defendant's claimed medical conditions fail to present extraordinary and compelling circumstances to warrant his release. The government filed sealed copies of the defendant's BOP medical records and the defendant provided sealed copies of the records as well. The government submits that the defendant's medical records do not show any diagnosis that is life threatening or prevents him from self-care within the BOP. The government argues that the defendant's medical conditions are well controlled within the institution and he receives treatment in response to his complaints and ailments. The government also notes an October 2022 BOP physical exam report comment that the defendant was a "well-developed, well-nourished mail in no acute distress."

This court has reviewed the defendant's medical records and agrees with the government that there is nothing extraordinary and compelling about the defendant's present medical conditions. None of the claimed medical conditions qualify as a serious physical or medical condition that would diminish the defendant's ability to provide self care within the BOP and from which he is not expected to recover. Nor does the defendant require long-term or specialized care that is not being provided for. *See* U.S.S.G. § 1B1.13, cmt. N.1(b)(1)(B). Accordingly, this claim is without merit.

As for the defendant's claim that he is extremely susceptible to COVID, the threshold question is whether the defendant has a particularized risk of contracting COVID in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)). The defendant acknowledges that he received a COVID vaccination.

None of the medical conditions presented by the defendant are risk factors that have been identified by the CDC as heightening the risk of severe injury or death from COVID-19. The court will note that on May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. The public health emergency prong in U.S.S.G. § 1B1.13 requires that the emergency be declared by an appropriate governmental authority. As of the date of this order, there is no new declared emergency involving the BOP or the public in general. This claim is without merit as well.

## II. *Rehabilitation*

The defendant suggests that he has provided cooperation that shows he has made a huge step toward rehabilitation and that he has worked hard at remaining infraction free. The government also correctly notes that rehabilitation by itself is not an extraordinary and compelling reason for purposes of this policy statement.

The defendant reminds the court that he has completed 17 programs and that prior to his health issues, he worked with the prison industry UNICOR.

Nothing has changed dramatically from the defendant's first motion for compassionate release (which was based on his medical conditions), thus this court finds nothing extraordinary and compelling regarding the defendant's age or rehabilitation efforts. In the "Post Sentencing Conduct" section below, the court notes a serious July 2024 prison disciplinary infraction that does not favor the defendant's claims of rehabilitation.

## III. *Sentencing Disparity Among Co-Defendants*

The defendant next alleges that sentencing disparities exist between himself and his co-defendants, two of whom this court granted sentence reductions under the First Step Act. The defendant raised this issue in his first motion under the First Step Act (ECF No. 189) and this court has already addressed and denied the disparity claim in its August 2021 order (ECF No. 198) which held:

> The defendant's current sentence is not disproportionate to those similarly situated defendants in this case. The court has previously reduced the life sentences imposed on two of the defendant's coconspirators—brothers Rodney Coleman and Martez Coleman—for reasons stated in the orders entered in those cases. Among those reasons was the relative youth (ages 20 and 23)

8

> when they committed the crimes and the fact that they were acting on directions of the defendant in this case. Unlike the defendant, neither of the Coleman brothers had a criminal record of any kind. They did not fire the fatal gunshots, but rather participated in desecrating and burying the body. While still holding the murder weapon in his hand, the defendant told the Colemans to dig the grave or "[they] would be next." Thus, the Coleman brothers cannot be considered comparable actors for purposes of comparative sentencing.
>
> It would be a perverse distortion of the sentencing disparity doctrine to grant the Coleman brothers' motions for a reduction based in large part on the fact that they were dominated by an older, experienced criminal, and then turn around and reduce the sentence of the experienced criminal based on the reductions give to the Coleman brothers.

(ECF No. 198, pp. 11–12). The court agrees with the government that the same reasoning applies now in his second motion for compassionate release and the court finds the defendant's argument is meritless.

### IV.  *Relief Under § 404(b) of the First Step Act*

In his present, second motion for compassionate relief, the defendant again asks the court for relief under § 404(b) of the First Step Act.  He states that he has not previously filed a motion pursuant to § 404(b) that was granted or denied on its merits after a complete review.

The defendant's first motion pursuant to the First Step Act (FSA) was filed in September 2019 (ECF No. 189).  There, the defendant sought a reduction of his sentence based on § 404(b) of the FSA which retroactively applied the reduced penalties for cocaine base or crack offenses announced in the Fair Sentencing Act of 2010.

In its order of August 20, 2021 (ECF No. 198) the court first found that the defendant's conviction was a "covered" offense under *United States v. Gravatt*, 953 F.3d 258

9

(4th Cir. 2020). The government conceded that the defendant was eligible for relief under the FSA, but requested the court to exercise its discretion and not reduce the defendant's sentence. Ultimately, after recalculating and considering the advisory sentencing Guidelines and § 3553(a) factors, this court denied relief under § 404(b). The court concluded that the defendant was a violent individual who committed a particularly heinous crime within a matter of months from his release from an earlier federal conviction and whose ultimate sentence was note based on controlled substance weights, but instead was based upon a murder cross reference under the Guidelines. The court also found the evidence showed the defendant was the ringleader of the drug conspiracy and the murder.

V. *Factors Under 18 U.S.C. § 3553(a)*

In its August 20, 2021 orders (ECF No. 197, 198) denying the defendant's initial First Step Action motions, this court set out its reasoning on the § 3553(a) factors. Since that time, there have been no substantive changes to these factors (with the exception of post-sentencing conduct discussed below), so the court will adopt the same as follows:

1. *Nature and Circumstance of the Offense.* The defendant is currently incarcerated for possessing with intent to distribute heroin and marijuana, cocaine base, and cocaine. He was also charged with money laundering and use of a firearm to commit murder in connection with a drug trafficking and violent crime. Finally, and most importantly, the defendant was charged with murder in furtherance of a serious drug trafficking crime. It is therefore easy for this court to conclude that the defendant's crimes were serious to begin with. Furthermore, the court cannot ignore the fact that the victim of the murder was

dismembered and burned, buried on one occasion, and then dug up and reburied in a second location.

The evidence produced by the government in this case clearly revealed that the defendant was the moving force behind the murder, as he directed certain of his associates in conducting the murder and desecrating the body following the murder. Specifically, after the victim was struck with weapons fire several times from the weapons possessed by the defendant, the defendant directed that the two Coleman brothers dismember and burn the body of Thomas Summers.

2. *History and Characteristics of the Defendant*. As noted previously, the defendant had a criminal history category of IV near the top of the scale for criminal offenses. He had been given a federal sentence of 5 years in 1995, and upon his release, immediately rejoined the drug distribution business. In fact, he involved himself in drug distribution while still in the federal halfway house for the 1995 sentence. He organized and participated in the murder of a fellow drug dealer, and then suggested to his associates that they murder other individuals that might be witnesses against him. On this record, the court has little hesitation in holding that the defendant is a most violent individual.

Prior to the instant federal conviction, the defendant had been convicted in both federal and state court. He has the following prior state convictions: disorderly conduct/simple assault/trespassing (1992); driving under suspension (1994); possession of marijuana (1995). The defendant was approximately 30 years old when the instant offenses took place.

*Post Sentencing Conduct*

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of his or her 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011).

Although the defendant's disciplinary infractions while incarcerated at the BOP were quite old—some dating back to early 2000s—he was sanctioned on two occasions for threatening bodily harm, refusing to obey an order, introduction of drugs/alcohol, exchanging money for contraband, and a 2022 infraction for tattooing or self-mutilation.

In a supplemental filing on November 13, 2024 (ECF No. 237), the government apprised the court that the defendant had incurred a more recent disciplinary violation. On July 2, 2024, the defendant admitted to making threatening comments to staff about wanting to kill another inmate. Under the circumstances, the court considers this a troubling violation.

3. *Seriousness of the Crimes*. This court regards the defendant's crimes as very serious, fully supportive of a significant sentence. The defendant is currently incarcerated for possessing with intent to distribute heroin and marijuana, cocaine base, and cocaine. He was also charged with money laundering and use of a firearm to commit murder in connection with a drug trafficking and violent crime. Finally, and most importantly, the defendant was charged with murder in furtherance of a serious drug trafficking crime. It is therefore easy for this court to conclude that the defendant's crimes were serious to begin with. Furthermore, the court cannot ignore the fact that the victim of the murder was

dismembered and burned, buried on one occasion, and then dug up and reburied in a second location.

    4.  *Whether the Sentence Promotes Respect for the Law and Just punishment for the offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

    5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

    6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.

    7.  *Need to Avoid Unwarranted Sentencing Disparities*. The defendant's current sentence is not disproportionate to those similarly situated defendants in this case as discussed herein.

    Were the court to reduce the defendant's sentence at this time, his sentence would not meet the goals of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, and adequate deterrence.

CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(1)(A).

Moreover, even if the defendant could demonstrate an extraordinary and compelling reason, this court's analysis and balancing of the § 3553(a) factors, taken collectively, clearly weigh against release of the defendant. Accordingly, the defendant's motions (ECF Nos. 207, 229) are denied.

IT IS SO ORDERED.

July 8, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge